Michael C. ANTONELLI, Plaintiff,

v.

DRUG ENFORCEMENT ADMINISTRATION, Defendant.

No. 84 C 6973.

United States District Court, N.D. Illinois, E.D.

March 5, 1985.

Michael C. Antonelli, pro se.

Dan K. Webb, U.S. Atty., Elizabeth Stein, Asst. U.S. Atty., Chicago, Ill., for defendant.

## ORDER

KOCORAS, District Judge.

This action under the Freedom of Information Act is before the court on defendant United States Drug Enforcement Administration's ("DEA") motion to vacate this Court's order of August 29, 1984 granting plaintiff Michael Antonelli leave to file and proceed in forma pauperis. For the reasons that follow, the motion is granted.

Antonelli brought this action seeking information the DEA maintained in its records on three individuals. He initiated the action with a complaint, and a motion for leave to file in forma pauperis accompanied by a financial affidavit executed under penalty of perjury on July 12, 1984. In his financial affidavit Antonelli stated he received $50 a month from the United States Bureau of Prisons for his job as Mechanical Services Clerk. He also declared that he received numerous gifts and donations from friends and relatives for basic needs. Although Antonelli maintained he had no money in a checking or savings account including his prison trust fund account, the certificate completed by a counselor at the Metropolitan Correctional Center indicated he had $3.69 on account at the prison. Read as a whole, the financial affidavit indicates that Antonelli is sufficiently impecunious to merit waiver of prepayment of filing fees.

The DEA, however, presents a far different picture of Antonelli's finances. According to the affidavits and documents the DEA has filed in support of its motion to vacate, Antonelli has filed more than 100 cases in this district since April 1979.[1] More than half of these cases were filed under the Freedom of Information Act. In the course of pursuing his administrative remedy to acquire access to records maintained by three federal agencies—DEA, the Federal Bureau of Investigation, and the Bureau of Alcohol, Tobacco and Firearms—Antonelli has on several occasions during the six-month period prior to the commencement of this action paid substantial amounts of money for costs of searching for and copying requested information. Between January 10, and July 3, 1984, Antonelli deposited in his prison trust fund $839.14. Assuming Antonelli received $50 a month in prison pay, only $300 of this is attributable to Antonelli's prison job. Antonelli used some of this money to pay for government records. In the six months prior to his suit, Antonelli signed money orders totalling $338.65. But most of Antonelli's payments came from outside sources. Third parties acting on behalf of Antonelli paid another $1,226.83 to acquire federal records. Of this amount, the Bureau of Alcohol, Tobacco and Firearms refunded $106.85. Thus, almost $2,000 not accounted for in the financial affidavit can be traced to Antonelli. In addition, in a July 1, 1984 letter to the FBI, Antonelli indicated a willingness to pay copying fees of $1,099.30. Because Antonelli, as a prisoner, need not worry about the cost of food, housing, clothing, and other essentials, the amounts at his disposal in the period preceding the filing of this case clearly disqualify him as a pauper. *See Zaun v. Dobbin,* 628 F.2d 990, 993 (7th

---

1. Antonelli filed these cases pursuant to. 28 U.S.C. § 1915. As 28 U.S.C. § 1915 only waives of prepayment of fees and costs, Antonelli owes the government at least $6000 just for the costs incurred in the filing of his cases. Costs of service and appeals would add substantially to that figure.

Cir.1980); *Carter v. Telectron, Inc.,* 452 F.Supp. 939, 942 (S.D.Tex.1976).

Antonelli does not clearly explain or identify the source of the funds he used to pay the various agencies for the records he obtained through his Freedom of Information requests. In his responsive brief, Antonelli apparently contends that he is getting money from those whose records he is attempting to obtain. If true, such practice subverts the purpose of the in forma pauperis statute, to open the federal courts to all, rich or poor. The Freedom of Information Act is a statutory right which is not limited by the requirement of standing. Thus, unlike most cases, a prisoner without funds can take advantage of the benefits of the pauper statute and litigate claims on behalf of another who is financially capable of paying court costs. Even assuming Antonelli has a legitimate purpose in obtaining the records for his own use, he should not be able to sue at government expense when a non-indigent party stands to benefit directly if Antonelli is successful in his litigation.

Accordingly, the Court grants the DEA's motion to vacate the order granting Antonelli leave to proceed in forma pauperis and dismisses this case. It appearing from the discrepancies between the financial affidavit submitted by Antonelli and the records supplied by the DEA that Antonelli may have intentionally misled the Court, dismissal shall be with prejudice unless Antonelli files within thirty (30) days a sworn affidavit identifying the source of each receipt of more than $10 credited to his prison trust fund account between January 10 and August 1, 1984, the source or sources of money orders # 392668, # 394876, # 398532, and # 400433 drawn on the Midwest Bank and Trust Company of Elmwood Park, Illinois, and the source or sources of all funds that the law firm of Jurek & Melaned paid to the DEA, FBI, and BATF on Antonelli's behalf between January 1, and August 1, 1984. *See Harris v. Cuyler,* 664 F.2d 388 (3d Cir.1981).

